**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT MISSISSIPPI
EASTERN DIVISION**

**ANGELA TIGNER**                                                                                      **PLAINTIFF**

**V.**                                                   **CIVIL ACTION NO.: 1:08CV9-SA-JAD**

**LEA C. PASLAY INSURANCE, INC., et. al**                               **DEFENDANTS**

**MEMORANDUM OPINION ON REMAND**

This cause comes before the Court on the Plaintiff's Motion to Remand this case to the Circuit Court of Lee County. Defendants Lea C. Pasley Insurance, Inc., and Evelyn Pasley Corbett (used collectively throughout as "Pasley Defendants")[1] have responded in opposition to the motion, and the Court, having considered the memoranda and submissions of the parties, along with other pertinent authorities, concludes that the motion should be denied.

*Factual and Procedural Background*

H.M. Richards, Inc., Plaintiff's employer, established and maintained for the benefit of its employees a welfare benefit plan entitled Blue Cross & Blue Shield Employee Health Protection Plan. Aside from medical coverage, H.M. Richards also offered its employees dental coverage, short-term disability benefits, long-term disability benefits, life insurance, cancer coverage, and critical illness insurance. Department of Labor regulations require employers that maintain employee benefit plans to submit certain documentation each year outlining the particular coverage and contracts the employer has entered for the insurance coverage. In the 2006 Summary Annual Report for the H.M. Richards, Inc., Insurance Plan, only the contracts with EMC National Life Company and Citizens Security Life Insurance Company are listed as part of the H.M. Richards employee

---

[1] Also named as a defendant is the Fictitious Defendant Insurance Company whose claims will be discussed here as well.

benefits plan. At issue here is whether the critical illness insurance Plaintiff signed up for on December 6, 2006, was part of the employee welfare benefit plan of H.M. Richards, Inc., such that the Plaintiff's claims are subject to the jurisdiction of this federal court.

Plaintiff filed suit against H.M. Richards, Inc., the Lea C. Pasley Insurance Company, Evelyn Pasley Corbett, an individual insurance agent, and the insurance company who issued the policy in the Lee County Circuit Court on November 5, 2007. Plaintiff suffered a heart attack on December 10, 2006, approximately four days after signing up for critical illness insurance. She incurred over $40,000 in medical expenses related to that incident. Plaintiff claims that she was denied coverage by the Pasley Defendants. Further, Plaintiff contends that the independent insurance agent, Evelyn Pasley Corbett, misrepresented to her that the effective date of the policy was the date it was purchased. Plaintiff specifically alleges claims against the Pasley Defendants on the grounds of breach of contract, promissory estoppel, breach of duty of good faith and fair dealing, fraud, misrepresentation, and civil conspiracy. H.M. Richards, Inc., has been dismissed as a party defendant by agreed order dated August 11, 2008.

The Defendants removed this action to the federal court on January 11, 2008, alleging that Plaintiff's claims involve a federal question under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* Plaintiff then filed a Motion to Remand on the basis that all of her claims were premised on state law and, thus, outside the federal question jurisdiction of this court.

*Standard for Federal Question Removal and Remand*

The Judiciary Act of 1789 provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant

2

or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). Original federal question jurisdiction exists in "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; MSOF Corp. v. Exxon Corp., 295 F.3d 485, 489 (5th Cir. 2002). The Fifth Circuit has held that the removal statutes are to be construed "strictly against removal and for remand." Eastus v. Blue Bell Creameries, L.P., 97 F.3d 100, 106 (5th Cir. 1996); Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S. Ct. 868, 85 L. Ed. 1214 (1941). After removal of a case, a plaintiff may move for remand, and "[if] it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). Once a motion to remand has been filed, the burden is on the removing party to establish that federal jurisdiction exists. De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995).

Whether a claim arises under federal law so as to confer federal question jurisdiction under 28 U.S.C. § 1331 is governed by the well-pleaded complaint rule, which provides that "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar, Inc. v. Williams, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). While federal law itself creates the cause of action in the majority of federal question cases, federal question jurisdiction may also exist where "the vindication of [the subject state law cause of action] necessarily turn[s] on some construction of federal law." Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983); see also Merrell Dow Pharms., Inc. v. Thompson, 478 U.S. 804, 808-09, 106 S. Ct. 3229, 92 L. Ed. 2d 650 (1986); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987).

3

Here, the propriety of the Defendants' removal depends upon whether any of the Plaintiff's claims arise under federal law, thereby giving this court original federal question jurisdiction over those claims.

*ERISA Governance*

We are presented with the threshold question of whether H.M. Richard's critical illness policy is a benefit plan regulated by ERISA. To determine the answer, "we ask whether a plan: (1) exists; (2) falls within the safe-harbor provision established by the Department of Labor; and (3) satisfies the primary elements of an ERISA 'employee benefit plan' -- establishment or maintenance by an employer intending to benefit employees." House v. Am. United Life Ins. Co., 499 F.3d 443, 448 (5th Cir. 2007) (citing Meredith v. Time Ins. Co., 980 F.2d 352, 355 (5th Cir. 1993)).

With respect to the first Meredith inquiry (existence of a plan), the Fifth Circuit has adopted an Eleventh Circuit test devised to measure the materiality of a purported plan:

> In determining whether a plan, fund, or program (pursuant to a writing or not) is a reality a court must determine whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits.

Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). Moreover, "[a] formal document designated as 'the Plan' is not required to establish that an ERISA plan exists; otherwise, employers could avoid federal regulation merely by failing to memorialize their employee benefit programs in a separate document so designated." Vega v. Nat'l Life Ins. Servs., 145 F.3d 673, 677 (5th Cir. 1998) (citing Memorial Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 241 (5th Cir.

4

1990)).[2]

According to the Plaintiff's critical illness insurance policy, her intended benefit is insurance coverage for any of the medical conditions or surgical treatments listed in that document, including cancer, heart bypass, heart attack, major organ transplant, renal failure, and stroke. Moreover, a reasonable person could ascertain from Plaintiff's insurance application that Angela Tigner was the beneficiary. Also looking at the enrollment form attached to Plaintiff's application, the Plaintiff's signature is located in a box titled "Payment Deduction Authorization and Acknowledgments of Proposed Insured." That capitalized paragraph notes that the premiums for the insurance policy will be deducted from the Plaintiff's paycheck and "none of the premium is paid by [the] employer." Further, the application itself is titled "Application to Mutual of Omaha Insurance Company." Thus, a reasonable person could ascertain the source of financing for the insurance. Last, a quick review of the critical illness insurance policy reveals a section entitled "How to File a Claim" followed by "Payment of Claims." Accordingly, a reasonable person could determine the procedures for receiving those benefits. Therefore, this analysis establishes that according to Meredith, a plan does exist in regard to Plaintiff's critical illness insurance policy. See Vega, 145 F.3d at 676 (finding that where all four requisites are present, a plan does exist).

The second Meredith factor to consider in order to qualify as an ERISA plan, is whether the plan falls within the Department of Labor's safe harbor exclusion. The safe harbor provision states

---

[2]ERISA's regulations regarding the responsibilities of plan fiduciaries do provide that "every employee benefit plan shall be established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). However, this fiduciary responsibility only arises once it has been determined that ERISA covers an employer's plan, and is not itself a prerequisite to coverage. Donovan, 688 F.2d at 1372.

5

that a group or group-type insurance program will not be considered an ERISA Plan if (1) the employer does not contribute to the plan; (2) participation is voluntary; (3) the employer's role is limited to collecting premiums and remitting them to the insurer; and (4) the employer receives no profit from the plan. 29 C.F.R. § 2510.3-1(j). The plan must meet all four criteria to be exempt from ERISA.

Here is it undisputed that H.M. Richards does not contribute to the plan and that employee participation is voluntary. Moreover, H.M. Richards acknowledged that they do not receive any profit from the plan. There is, however, a dispute regarding the employer's role in the plan. As noted by the Fifth Circuit in <u>Hansen v. Continental Insurance Company</u>, to meet the third prong, the employer's function with respect to the program must be limited *solely* to permitting the insurer to publicize the program to its employees, collecting premiums, and remitting them to the insurer. 940 F.2d 971, 977 (5th Cir. 1991).

H.M. Richards, Inc.'s involvement was not so limited. In fact, according to an internal memo circulated regarding the adoption of the new benefits plan, Joe Tarrant, Vice President of Operations at H.M. Richards avers, "We have reviewed other supplemental insurances in the past few months, and we feel this is the best product offered regarding critical illnesses." Further, H.M. Richards actively solicited its employees with open enrollment period updates and other advertising for those benefits. H.M. Richards also held an open enrollment on-campus insurance "fair" for those who needed to add this benefit among others. Thus, H.M. Richards' involvement with the critical illness insurance program was not so limited as to exempt them from ERISA coverage.

We conclude that the critical illness insurance coverage does not meet the safe harbor

exclusion. Even if the safe harbor is barred, however, that does not necessarily mean that the insurance policy is part of an ERISA plan. A plan that falls outside of the safe harbor exception does not fall within the jurisdiction of ERISA unless it satisfies the third Meredith prong. Hansen, 940 F.2d at 975.

To meet the third Meredith prong, a plan must satisfy the primary elements of an ERISA 'employee benefit plan' -- establishment or maintenance by an employer intending to benefit employees. Under ERISA, an employee welfare benefit plan is, in pertinent part:

> . . . any plan, fund, or program, which was . . . or is . . . established or maintained by an employer . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . benefits in the event of sickness, accident, disability, death or unemployment . . . .

29 U.S.C. § 1002(1). According to the Fifth Circuit, for an employer to establish or maintain a plan, there must be "some meaningful degree of participation by the employer in the creation or administration of the plan," and an "intent to provide its employees with a welfare benefit program." Hanson, 940 F.2d at 978. "The 'established or maintained' requirement is designed to ensure that the plan is part of an employment relationship. . . . We determine whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan." Anderson v. UNUM Provident Corp., 369 F.3d 1257, 1263 (11th Cir. 2004) (citing Gaylor v. John Hancock Mut. Life Ins. Co., 112 F.3d 460, 464 (10th Cir. 1997)).

Here, Joe Tarrant, Jr., testified that H.M. Richards, Inc., intended the critical illness insurance to be included in its employee welfare benefit plan. ERISA specifically envisions that an employer

7

may establish an employee welfare benefit plan "through the purchase of insurance or otherwise." 29 U.S.C. 1002(1). Further, in several "open enrollment" notification memorandums, the Human Resources Director at H.M. Richards refers to the critical illness insurance as part of the employee benefits and includes a Benefit Information Sheet indicating the employees current election for benefits and holding out the critical illness insurance as one of those benefits. In a memorandum sent to all H.M. Richard's employees, Tarrant announced the addition of critical illness insurance plan "to our benefits." Moreover, Tarrant explained, "We have reviewed other supplemental insurances in the past few months, and we feel this is the best product offered regarding critical illnesses." By labeling this insurance the "best product offered," H.M. Richards is essentially endorsing this insurance policy above all other similar policies available. See Hansen, 940 F.2d at 978 (employer's endorsement of benefits policy satisfies the burden of demonstrating the employer's intent to establish an ERISA plan). Plaintiff also admitted in her Complaint that H.M. Richards' employees attempted to help her determine the benefits owed her after her heart attack. This level of involvement evidences H.M. Richards' commitment to the critical illness insurance policy as part of its employee welfare benefits plan.

Plaintiff additionally argues that because the insurance company could contend that the insurance policy was not in effect at the time she suffered the heart attack, that argument takes this cause of action outside the parameters of ERISA. The Court finds this argument unpersuasive. ERISA defines "participant" as "any employee . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees . . ." 29 U.S.C. § 1002(7). Thus, even if Plaintiff was not covered by H.M. Richards' employee benefit plan at the time of her heart attack, her claims would still be governed by ERISA.

Accordingly, the critical illness insurance plan was sufficiently established and maintained by H.M. Richards such that it falls under ERISA's umbrella of protection.

*Preemption of Tigner's State Law Claims*

Congress's objectives in enacting ERISA were to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing appropriate remedies, sanctions, and ready access to the Federal courts. 29 U.S.C. § 1001(b). To this end, ERISA's preemption provision is intended "to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits." Egelhoff, 532 U.S. at 148, 121 S. Ct. 1322 (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 9, 107 S. Ct. 2211, 96 L. Ed. 2d 1 (1987)). A uniform administrative scheme serves to minimize administrative and financial burdens by avoiding the need to tailor plans to the peculiarities of the law of each state. Ingersoll-Rand Co. v. McClendon, 498 U.S 133, 142, 111 S. Ct. 478, 112 L. Ed. 2d 474 (1990).

The United States Supreme Court has distinguished between two types of preemption available under ERISA. The first, "complete preemption," includes "any state-law cause of action that duplicates, supplements, or supplants the . . . civil enforcement remedy" in ERISA § 502 and thereby offers a basis for removal. Aetna Health Inc. v. Davila, 542 U.S. 200, 209, 124 S. Ct. 2488, 159 L. Ed. 2d 312 (2004). The second, "conflict preemption," under ERISA § 514 covers state laws that "relate to an[] employee benefit plan." 29 U.S.C. § 1144.

In light of these statutory objectives, this Court applies a two-prong test to the defense of ERISA preemption. A defendant pleading preemption must prove that: (1) the claim "addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of the Plan; and (2) the claim directly affects the relationship among traditional ERISA entities - - the employer, the plan and its fiduciaries, and the participants and beneficiaries." <u>Mayeaux v. La. Health Serv. and Indem. Co.</u>, 376 F.3d 420, 432 (5th Cir. 2004). Because ERISA preemption is an affirmative defense, the Defendants bear the burden of proof on both elements. See <u>Metro. Life Ins. Co. v. Taylor</u>, 481 U.S. 58, 63, 107 S. Ct. 1542, 95 L. Ed. 2d 55 (1987) (ERISA preemption is a defense); <u>Bank of La. v. Aetna US Healthcare, Inc.</u>, 468 F.3d 237, 242 (5th Cir. 2006) (defendant bears burden of proving ERISA preemption).

Defendants argue that ERISA's civil enforcement provision creates causes of action that replace the analogous areas of state law upon which Plaintiff intended to base her claim. Specifically, ERISA § 502(a)(1)(B) authorizes a participant to file suit in federal court to "recover benefits under the terms of his plan" or "to clarify his rights to future benefits under the terms of the plan." Therefore, Defendants assert, Plaintiff's claims in this matter are completely preempted under ERISA.

Plaintiff brings suit against the Pasley Defendants alleging that Defendants breached their contractual obligations and their duty of good faith and fair dealing in contracting, and Plaintiff reasonably relied upon Defendants' promises of coverage to her detriment. Further, Plaintiff contends that Evelyn Pasley Corbett's representation that Plaintiff would be immediately covered was a material misrepresentation, her claim for insurance benefits was fraudulently denied, and Defendants' intentional actions caused her extreme emotional distress.

Plaintiff's claims against Defendant for breach of contract, promissory estoppel, material misrepresentation, fraud, and intentional infliction of emotional distress, all concern Plaintiff's right to receive benefits under the terms of the plan.  Specifically, Plaintiff claims Defendants breached the contract of insurance by not paying out her claim.  Further, she notes that she reasonably relied on Evelyn Pasley Corbett's representation that she would be covered by insurance beginning on that date, and because she was not, has suffered a detriment. Moreover, Evelyn Pasley Corbett's representation damaged her because she was unable to collect benefits, her claim for benefits was fraudulently denied, and those actions in denying her benefits caused her emotional distress.  These claims are necessarily dependent on Plaintiff's right to receive benefits under the terms of the plan. The Fifth Circuit has expressly held that ERISA preempts state law claims based on breach of contract, fraud, and negligent misrepresentation where the Plaintiff alleges those actions had the effect of orally modifying the express terms of an ERISA plan and increasing plan benefits for participants or beneficiaries who claim to have been misled.  See Lee v. E.I. DuPont de Nemours & Co., 894 F.2d 755, 758 (5th Cir. 1990); Cefalu v. B.F. Goodrich Co., 871 F.2d 1290, 1295 (5th Cir. 1989).  As such, Defendants have proven that these claims have satisfied the requirements of the first prong.  See Metro. Life Ins., 481 U.S. at 58 (state law claims falling within scope of § 502(a)(1)(B) of ERISA raise a federal question for purpose of federal court jurisdiction).

A "traditional ERISA entity" has been defined to encompass plan administrators, fiduciaries, plan participants and beneficiaries, and employers.  Bullock v. Equitable Life Assur. Soc'y of the United States, 259 F.3d 395, 399 (2001) (citing Hook v. Morrison Milling Co., 38 F.3d 776, 781 (5th Cir. 1981)).  Moreover, Fifth Circuit precedent establishes that the critical determination for the second prong is whether the claim itself created a relationship between the plaintiff and defendant

that was so intertwined with an ERISA plan that it cannot be separated. Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir. 1990).

Fifth Circuit case law teaches that "a state-law claim by an ERISA plan participant against her employer is preempted when based upon a denial of benefits under the defendant's ERISA plan." Smith v. Texas Children's Hosp., 84 F.3d 152, 155 (5th Cir. 1996). Accordingly, had H.M. Richards, Inc., not been dismissed as a party defendant, Plaintiff's claims against the employer would have been preempted. Thus, the court analyzes below whether Lea C. Pasley Insurance Company, Evelyn Pasley Corbett, or the Insurance Company are plan administrators or fiduciaries or whether Plaintiff's claims are so intertwined with the ERISA plan that they are preempted by virtue of the relationship between plaintiff and defendant.

ERISA defines an administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A). Where a plan administrator is not designated in the plan documents, the administrator is either the plan sponsor or employer, or "such other person as the Secretary may by regulation prescribe." Id. Congress defined a plan fiduciary as a person

> (i) [who] exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets; [or]       *       *       *
> (iii) who has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A).

A brief review of the Mutual of Omaha Critical Illness Indemnity Insurance policy shows no plan administrator or fiduciary expressly named in those documents. Moreover, Lea C. Pasley

Insurance Company and Evelyn Pasley Corbett both averred in their responses to Requests for Admissions that they neither administered an ERISA plan for H.M. Richards, nor were they fiduciaries for any alleged ERISA plan. Indeed, the plan documents evidence that neither Lea C. Pasley Insurance Company nor Evelyn Pasley Corbett had any discretionary authority regarding the denial or payment of claims. Thus, Plaintiff's claims against Lea C. Pasley Insurance Company and Evelyn Pasley Corbett are not preempted as their status as independent insurance agency and agent are not affected as "traditional ERISA entities."

Even though these Defendants are not "traditional ERISA entities," Plaintiff's claims against them are so intertwined with the ERISA plan that the claim itself creates a relationship between the Plaintiff and Defendants such that they are preempted by ERISA. As noted above, all of Plaintiff's claims relate to the denial of benefits by the Insurance Company, Lea C. Pasley Insurance Company, and other alleged wrongful conduct on the part of Evelyn Pasley Corbett after the Plaintiff became a participant in the ERISA plan. As such, these claims must be preempted by ERISA.

*Conclusion*

Accordingly, the critical illness insurance policy proposed and promoted by Plaintiff's employer, H.M. Richards, Inc., is an employee benefit plan and falls under ERISA's protections. Moreover, Plaintiff's claims are so intertwined with the ERISA plan that a relationship between the Plaintiff and Defendants is a necessary consequence of Plaintiff's causes of action. As such, Plaintiff's claims against Lea C. Pasley Insurance Company, Evelyn Pasley Corbett, and the Insurance Company, are preempted under ERISA. Plaintiff's Motion to Remand is DENIED.

SO ORDERED, this the __3rd__ day of September, 2008.

                                         /s/ Sharion Aycock  
                                         **U.S. DISTRICT JUDGE**